

**SO ORDERED.**

**SIGNED this 19 day of March, 2008.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| VISION TECHNOLOGY CORPORATION (A NEVADA CORPORATION) | 07-00467-5-ATS |
| DEBTOR | |

| | |
|---|---|
| HOLMES P. HARDEN, TRUSTEE | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | S-07-00121-5-AP |
| ECHOSTAR SATELLITE, LLC | |
| Defendant. | |

### ORDER ALLOWING MOTION TO STAY PENDING ARBITRATION

The matters before the court are the motions filed by EchoStar Satellite, LLC, to dismiss or stay this adversary proceeding pending arbitration and, alternatively, to dismiss certain causes of action in the complaint. A hearing took place in Raleigh, North Carolina on February 28, 2008.

Vision Technology Corporation, a Nevada corporation, filed a petition for relief under chapter 7 of the Bankruptcy Code on March 7, 2007, and Holmes P. Harden was appointed trustee. On November 16, 2007, Mr. Harden filed the instant adversary proceeding against EchoStar

Satellite, LLC, seeking to recover sums allegedly due to the debtor pursuant to a contract between EchoStar and the debtor's predecessor-in-interest, Dish TV Now, Inc. The complaint alleges causes of action for breach of contract, unjust enrichment, and unfair and deceptive trade practices pursuant to North Carolina General Statutes Chapter 75. EchoStar contends that the controlling agreement requires arbitration of this dispute and requests that the adversary proceeding be dismissed or stayed pending arbitration. In the alternative, EchoStar moves to dismiss the unfair or deceptive trade practices claim, contending that Colorado law applies to the dispute, and that a mere breach of contract claim cannot support an unfair trade practices claim under either Colorado or North Carolina law.

EchoStar and Dish TV were parties to a contract entitled "EchoStar Retailer Agreement" entered on December 21, 2004. According to the contract, EchoStar was engaged in the business of providing digital direct broadcast satellite services under the name DISH Network, and the agreement authorized Dish TV to market and solicit orders for DISH Network products and services on a non-exclusive basis. According to the trustee, EchoStar stopped making payments under the contract as of November 20, 2005, and EchoStar sent a letter terminating the contract on January 20, 2006. This action is to recover the payments due from November 20, 2005 through January 20, 2006.

EchoStar relies on Section 15.3 of the Retailer Agreement, which provides

> Except as set forth to the contrary . . . , any and all disputes, controversies or claims between Retailer and/or any of its Affiliates, on the one hand, and EchoStar and/or any of its Affiliates, on the other hand, including, without limitation any and all disputes, controversies or claims arising out of or in connection with this Agreement . . . , or which relate to the parties' relationship with each other . . . , which are not settled by negotiation, the claim process above, or the mediation process set forth above, shall be resolved solely and exclusively by binding arbitration in accordance

with . . . [the Federal Arbitration Act] and the Commercial Arbitration Rules of the American Arbitration Association.

Retailer Agreement at 22, § 15.3. EchoStar maintains that this broad arbitration provision mandates that this dispute, related to the parties' relationship to each other, be resolved through arbitration. EchoStar further relies on § 15.6, which provides that "[t]he provisions of this Section 15 shall survive expiration or termination of this Agreement (for any reason or no reason whatsoever) indefinitely." Retailer Agreement at 23, § 15.6.

The trustee, on the other hand, maintains that because EchoStar terminated the contract, it cannot enforce the arbitration provisions. On January 20, 2006, EchoStar sent Dish TV notice that the contract "has automatically terminated pursuant to Section 10.4 thereof." Section 10.4 of the Retailer Agreement provides for automatic termination upon the occurrence of any of 19 conditions, though the terminating letter does not indicate which condition allegedly justified the termination. The trustee notes that termination under this provision does not allow an opportunity to cure, and thus as far as EchoStar was concerned, the contractual relationship was over. Accordingly, EchoStar cannot now seek to enforce parts of the contract it finds advantageous, including the arbitration provision.

In support of his position, the trustee notes that in none of the cases cited by EchoStar was arbitration compelled in favor of the party terminating the contract. Instead, the contract was either still in effect, or the non-terminating party sought to compel arbitration. The trustee also relies on a line of cases that relieve a non-terminating party from performance under a contract after the other party repudiates the contract. See Pl's Response to Motion to Dismiss at 7-8. Specifically, the trustee cites Solitron Devices, Inc. v. Honeywell, Inc., 842 F.2d 274, 278 (11th Cir. 1988), in which the court held that "where the contract has already been terminated by the party allegedly in breach,

the suing party's compliance or lack of compliance with the termination clause is irrelevant." Presumably, the trustee's argument is that if the non-terminating party is not required to comply with the termination clause, it likewise is not required to comply with any other provision of the contract, including the dispute resolution terms.

While it is true that none of the cases cited by EchoStar are in the same procedural posture as this adversary proceeding, there are other cases in which the party terminating the contract compelled arbitration of an action brought by the non-terminating party.  See Arkcom Digital Corp. v. Xerox Corp., 289 F.3d 536 (8th Cir. 2002) (arbitration compelled where contractor brought state court action against company after company terminated contractor as authorized service agent); Excel Group, Inc. v. New York City Transit Authority, 814 N.Y.S. 2d 220 (N.Y. App. Div. 2006) (summary judgment entered against contractor where contractor failed to submit breach of contract claim to arbitration).

In Excel, the plaintiff entered into a construction contract with the New York City Transit Authority.  The Transit Authority notified the plaintiff in writing that it was in default of the contract and gave it seven days to cure, but later notified the plaintiff that the cure plan was unacceptable and terminated the contract for cause.  The plaintiff filed a state court action for breach of contract, and the Transit Authority maintained in its affirmative defenses that the plaintiff was required to pursue the resolution procedure set forth in the contract.  The appellate court upheld the trial court's entry of summary judgment in favor of the Transit Authority, holding

> absent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes *arising thereunder*, whether its cessation was the result of the expiration of its term, exercise of a unilateral termination option, or breach. . . . Accordingly, the plaintiff was required to pursue the resolution procedure.

Excel, 814 N.Y.S. 2d at 223 (citations and internal quotations omitted) (emphasis in original).  The

court went on to note that the contract did not create an exception to the dispute resolution procedure

in cases where the contract has been terminated.   Id.

Holding that a dispute resolution provision survives termination of the contract is not

inconsistent with the anticipatory repudiation cases cited by the trustee.  Those cases relieve a non-

terminating party from performing futile acts, including performing under the contract and following

contractual termination provisions where the other party has made it clear it will not perform.

Dispute resolution provisions, on the other hand, are the parties' agreed mechanism for resolving

disputes under the contract, which could include the termination of the contract itself.  The strong

policy considerations weigh in favor of enforcing arbitration provisions, absent a clear expression

of intent by the parties for the provisions not to survive termination.  In this case, the contract

expressly provides that "[t]he provisions of this Section 15 shall survive expiration or termination

of this Agreement (for any reason or no reason whatsoever) indefinitely."  Retailer Agreement at 23,

§ 15.6.

Based on the foregoing, the parties are bound by the arbitration requirement and EchoStar

may enforce that provision despite its termination of the contract.  The trustee conceded that absent

the question of whether the terminating party could compel arbitration, the issues in the adversary

proceeding are non-core and would be subject to arbitration.  Accordingly, the motion to stay this

proceeding pending arbitration is **ALLOWED**, and the court does not need to address the alternative

motion to dismiss.

**SO ORDERED.**

**END OF DOCUMENT**